## No. 14-2327

# United States Court of Appeals
# for the Fourth Circuit

W.C. & A.N. MILLER DEVELOPMENT COMPANY,

*Plaintiff – Appellant,*

*v.*

CONTINENTAL CASUALTY COMPANY,

*Defendant – Appellee.*

*On Appeal from the United States District Court of Maryland at Greenbelt
in No. 8:14-cv-00425-GJH (Hon. George J. Hazel, Judge)*

## BRIEF FOR APPELLANT

Paul J. Kiernan
HOLLAND & KNIGHT, LLP
800 17th Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 955-3000
Facsimile: (202) 955-5564
E-mail: Paul.Kiernan@hklaw.com

*Counsel for Appellant*
*W.C. & A.N. Miller Development Company*

January 26, 2015



**DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION**

**W.C. & A.N. MILLER DEVELOPMENT COMPANY,**
*Plaintiff-Appellant*

*v.*

**CONTINENTAL CASUALTY COMPANY,**
*Defendant-Appellee*

No. 14-2327

Pursuant to FRAP 26.1 and Local Rule 26.1, Appellant W.C. & A.N. Miller Development Company makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity?

[] YES [X] NO

2. Does party/amicus have any parent corporations?

[ ] YES [X] NO

If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?

[ ] YES [X] NO

If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?

[ ] YES [X] NO

If yes, identify entity and nature of interest:

5. Is party a trade association?

[ ] YES [X] NO

If yes, identify all members of the association, their parent corporations, and any publicly held companies that own 10% or more of a member's stock:

6. If case arises out of a bankruptcy proceeding, identify any trustee and the members of any creditor's committee:   Not applicable.

Respectfully submitted,

HOLLAND & KNIGHT LLP

**/s/  Paul J. Kiernan**
Paul J. Kiernan
Holland & Knight, LLP
800 17th Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 955-3000
Facsimile: (202) 955-5564
E-mail:  Paul.Kiernan@hklaw.com

*Counsel for Appellant W.C. & A.N. Miller Development Company*

ii

# TABLE OF CONTENTS

*Page*

DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER
ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION ...........i

TABLE OF AUTHORITIES .................................................................................v

I.     ISSUES PRESENTED FOR REVIEW .........................................1

II.    JURISDICTIONAL STATEMENT .............................................1

III.   STATEMENT OF THE CASE .....................................................2

       A. The terms of the Policy..........................................................2

       B. The 2010 Lawsuit. ..................................................................5

       C. The 2006 Lawsuit. ..................................................................7

       D. Continental denies coverage for the 2010 Lawsuit. ..................9

IV.    SUMMARY OF ARGUMENT ....................................................10

V.     ARGUMENT................................................................................11

       A. Standard of Review ................................................................11

       B. The district court incorrectly construed the "Interrelated
          Wrongful Acts" provision of the policy...................................12

          1. The 2006 Lawsuit did not involve covered "wrongful acts." ............12

          2. The court's application of the "interrelated wrongful acts"
             provision is contrary to the law in this jurisdiction............................15

       C. The district court erroneously endorsed the insurer's expanded
          concept of "common scheme."................................................19

       D. The district court erred in giving the insurer, not the insured, the
          benefit of the doubt regarding coverage..................................23

VI.    CONCLUSION.............................................................................25

VII.    REQUEST FOR ORAL ARGUMENT ......................................................... 25

CERTIFICATE OF SERVICE ............................................................................. 26

CERTIFICATE OF COMPLIANCE ...................................................................... 27

# TABLE OF AUTHORITIES

*Page(s)*

## <u>Cases</u>

*ACE Am. Ins. Co. v. Ascend One Corp.*,
   570 F. Supp. 2d 789 (D. Md. 2008)..........................................................*passim*

*Bostic v. Schaefer*,
   760 F.3d 352 (4th Cir. 2014) .........................................................11

*Burbach Broad Co. of Del. v. Elkins Radio Corp.*,
   278 F.3d 401 (4th Cir. 2002) .........................................................11

*Butler v. United States*,
   702 F.3d 749 (4th Cir. 2012) .........................................................11

*Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*,
   889 A.2d 387 (Md. 2006) .........................................................23

*Dutta v. State Farm Ins. Co.*,
   769 A.2d 948 (Md. 2001) .........................................................24

*Edwards v. City of Goldsboro*,
   178 F.3d 231 (4th Cir. 1999) .........................................................11

*Eureka Fed. Sav. & Loan Ass'n. v. Am. Cas. Co. of Reading, Pa.*,
   873 F.2d 229 (9th Cir. 1989) .........................................................21

*FDIC v. Mmahat*,
   907 F.2d 546 (5th Cir. 1990) .........................................................20, 22

*Glascoff v. OneBeacon Midwest Ins. Co.*,
   2014 WL 1876984 (S.D.N.Y. May 8, 2014) .........................................................20

*Megonnell v. United Servs. Auto Ass'n*,
   796 A.2d 758 (Md. 2002) .........................................................24

*Shaw v. Stroud*,
   13 F.3d 791 (4th Cir. 1994) .........................................................11

*Travelers Indem. Co. of Am. v. Jim Coleman Auto. of Columbia, LLC*,
   236 F. Supp. 2d 513 (D. Md. 2002).........................................................14

**<u>Statutes and Rules</u>**

28 U.S.C. § 1291 ................................................................................................2

28 U.S.C. § 1332 ................................................................................................1

Fed. R. Civ. P. 12(b) .......................................................................................11

Fed. R. Civ. P. 12(c) ....................................................................................1, 11

## I.    ISSUES PRESENTED FOR REVIEW

1. Did the district court incorrectly construe the "Interrelated Wrongful Acts" provision of the policy and err in upholding the insurance company's denial of coverage?

2. Did the district court erroneously adopt the insurer's expanded concept of "common scheme" even though no such "common scheme" was evident in the two earlier lawsuits?

3. Did the district court err in giving the insurer, not the insured, the benefit of the doubt regarding the interpretation of the policy's defense-costs provision?

## II.    JURISDICTIONAL STATEMENT

Appellant W.C. & A.N. Miller Development Company ("Miller Development") filed suit for breach of insurance contract in the Circuit Court for Montgomery County. (JA 7.) Appellee Continental Casualty Company ("Continental") timely removed the action to the United States District Court for the District of Maryland and filed a counterclaim for declaratory judgment. (JA 13.) The district court's subject-matter jurisdiction was based on 28 U.S.C. §1332.

On November 7, 2014, the district court granted Continental's Motion for Judgment on the Pleadings under FRCP Rule 12(c) and denied Miller

1

Development's Motion for Partial Summary Judgment. (JA 305.)[1] On December 3, 2014, Miller Development timely filed a notice of appeal of the district court's November 7, 2014 order. (JA 306.) This Court's subject-matter jurisdiction is based on 28 U.S.C. § 1291 because this appeal is from a final order or judgment that disposed of all of the parties' claims.

## III.    STATEMENT OF THE CASE

### A.      The terms of the Policy.

Miller Development purchased a claims-made business-liability insurance policy from Continental (Policy No. 287176922 (the "Policy")), for claims made between November 1, 2010 and November 1, 2011 (the "Policy Period"). (JA 35-75.) The Policy provided coverage for Miller Development as the insured company under the Policy and for certain of Miller Development's officers, directors, and affiliated entities, generally referred to in the Policy as "Insured Persons." (JA 35-36.)

The Policy included a Directors' and Officers' Liability Coverage Part ("D&O Coverage") and an Entity Liability Coverage Part ("Entity Coverage"). (*Id.*) The terms relevant to the current lawsuit are essentially the same for both forms of

---

[1]      Miller's motion was for partial summary judgment because Miller sought judgment on Continental's liability under the insurance policy but had not submitted for resolution the question of the amount of damages. Miller also sought entry of summary judgment against Continental on the latter's counterclaim for declaratory judgment.

coverage. In the insuring clause of its Entity Coverage, Continental agreed to the following:

> The Insurer shall pay on behalf of **Named Company** or any **Subsidiary Loss** resulting from any **Claim** first made during the **Policy Period** or the Extended Reporting Period, if applicable, against **Named Company** or any **Subsidiary** for a **Wrongful Act**.

(JA 57.) The coverage in the D&O Coverage was to the same effect. (JA 53.) The coverage parts obligated Continental to pay Miller Development's Losses, including "**Defense Costs**," up to a maximum of $3,000,000, with a $25,000 retention, in the event that any of the insured parties were served with a civil lawsuit alleging any "wrongful act." (JA 37.) There is no dispute that the Policy was valid and no dispute about the scope of the people and entities insured by the Policy. (JA 123-128.)

The Policy had several other defined terms relevant to the present case. First, a "**Claim**" is a demand for damages or relief against an **Insured Person**. A civil proceeding is a Claim. (JA 53.)

Second, "**Loss**" means damages, judgments, and Defense Costs for which Insured Persons "are legally obligated to pay on account of a covered **Claim**." (JA 53.)

3

Third, the Policy provides in the "Exclusions" section:

> The Insurer shall not be liable to pay any **Loss** under this Coverage Part in connection with any **Claim** made against the **Insured Persons**
>
> ***
>
>  (l) for breach of any written or oral contract or agreement ....

(JA 54-55.)

The Policy provides that two or more separate Claims that contain "Interrelated Wrongful Acts" are to be considered one Claim deemed to have been made on the date on which the earliest such Claim was first made. (JA 43.) "Interrelated Wrongful Acts" is defined in the Policy:

> **Interrelated Wrongful Acts** means any **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event.

(JA 39.) A "**Wrongful Act**" means "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the **Insured Persons** in their capacity as such or by **Named Company** or any Subsidiaries." (JA 54.)

Thus, the express terms of the Policy follow a logical path, namely:

i.    Continental pays **Losses** (here, Defense Costs)

ii.   **Losses** are amounts the Insured is obligated to pay for a covered **Claim**

iii.  Continental does not cover **Losses** for **Claims** for breach of contract.

4

But, as discussed below, Continental argued, and the district court erroneously agreed, that the concept of **Interrelated Wrongful Act** could be stretched to include a Claim for breach of contract for which coverage was excluded and which was remote in time and circumstance from the Claim for which coverage was otherwise required under the Policy.

### B.     The 2010 Lawsuit.

On October 29, 2010, Miller Development and other Insured Persons covered under the terms of the Policy (including certain individual directors and officers) were sued in the United States District Court for New Jersey (Case No. 10-CV-05645-KSH-PS) ("2010 Lawsuit"). (JA 76-121.) The relevant insured defendants were Miller Development; W.C. & A.N. Miller Investment Company; W.C. & A.N. Miller ESI Ventures; LLC, Edward J. Miller: Ernest M. Miller, Jr.; Robert R. Miller; Haymount Mezz; Vincent Pasko; and Haymount Limited Partnership. (*Id.*) The complaint alleged that in 2008 these defendants engaged in fraudulent transfers under New Jersey law (Count I); fraudulent transfers under Virginia law (Count II); common-law conspiracy (Count III); statutory civil conspiracy (Count IV); aiding and abetting (Count V); creditor fraud (Count VI); and were liable for punitive damages (Count VII) and attorneys' fees and costs (Count VIII). (JA 108-117.)

The plaintiff in the 2010 Lawsuit was Jonathan Kohn, a bankruptcy trustee for a company known as International Benefits Group ("IBG"). IBG filed for

bankruptcy protection in July 2004. (JA 169-171.) In the 2010 Lawsuit, Mr. Kohn alleged that on May 30, 2008, Haymount Limited Partnership sold the Haymount property in Virginia to Avanti Investment Advisors for $21,500,000.00, and that Haymount Limited Partnership used the sales proceeds to pay the debt owed to its two secured creditors, GMAC and Haymount Mezz. (JA 97-98.) Specifically, Kohn alleged that Haymount Limited Partnership directed $5 Million to Haymount Mezz out of the sales proceeds. (*Id.*) Kohn alleged that the defendants engineered preferential payments to themselves in derogation of the rights of creditors of Haymount Limited Partnership, including IBG. (*Id.*) Kohn sought damages against these defendants, including disgorgement of funds which they had received in connection with the sale of the property to Avanti in 2008. (JA 108-117.)

There is no dispute that the 2010 Lawsuit constituted a "Claim" that was made within the Policy Period and alleged "Wrongful Acts" against Miller Development and other Insured Persons within the scope of the Policy. (JA 123.) The issue below and on appeal is whether the Policy allowed Continental to refuse to provide a defense or pay defense costs for the Claim because the 2010 Lawsuit reflected Interrelated Wrongful Acts under the Policy stemming from a 2006 Lawsuit filed by Kohn.

### C.    The 2006 Lawsuit.

The 2006 Lawsuit, which Continental cited to deny coverage for the 2010 Lawsuit, was a breach-of-contract claim brought by IBG's trustee Jonathan Kohn. (JA 169-214.) On March 21, 2006, Kohn filed suit against Haymount Limited Partnership, Haymount Corporation, Westminster Associates II, Edward J. Miller, John Clark, and American Property Consultants. (*Id.*) The 2006 Lawsuit asserted five claims: Breach of Contract (Count I); Unjust Enrichment/Quantum Meruit (Count II); Tortious Interference with the Fee Agreement (Count III); Common Law Conspiracy (Count IV); and Statutory Conspiracy (Count V). (JA 183-188.)

In the 2006 Lawsuit, Kohn alleged that Haymount Limited Partnership (whose two general partners were Haymount Corporation and Westminster Associates II) entered into a written contract with IBG in 2002. In that contract, IBG agreed to assist Haymount Limited Partnership to find lenders to finance the "Haymount" development in Virginia. Haymount Limited Partnership agreed to pay a $3 million fee to IBG if Haymount Limited Partnership utilized a loan from a lender introduced by IBG. (JA 173-175.) The IBG contract was executed by IBG and Haymount Limited Partnership. (JA 174.) It was signed on behalf of Haymount Limited Partnership by Edward J. Miller, President of Haymount Corporation, and John Clark, Vice-President of Westminster Associates II. (JA 173-174.)

In the 2006 Lawsuit, Kohn alleged that IBG fulfilled its obligations under the IBG Fee Agreement but that Haymount Limited Partnership did not pay the fee. Kohn therefore filed suit to be paid under the IBG contract. (JA 169-214.) The 2006 Lawsuit was styled as, and drafted as, a suit for breach of contract. (*Id.*) In addition to the claims against the Haymount entities and individuals, Kohn also sued third-party American Property Consultants, another financing broker, alleging that it tortiously interfered with IBG's rights under its contract with Haymount Limited Partnership. (JA 178.) All five claims were based on the same contractual breach, and all five claims accrued on the same date—July 24, 2004, when Haymount Limited Partnership closed on the GMAC loan and failed to pay IBG the fee allegedly due under the contract. (JA 183-188.)

On June 27, 2007, the New Jersey District Court dismissed all claims against Mr. Miller and Mr. Clark individually, finding that they could not be liable personally for tortiously interfering with the contract entered into by Haymount Limited Partnership. (JA 223-224.) The "conspiracy" and tort claims asserted against the remaining defendants were also dismissed since a party to a contract cannot tortiously interfere or conspire to interfere with its own contract. (JA 226). Judgment was eventually entered in favor of Kohn on January 8, 2010, solely on Count I for breach-of-contract against Haymount Limited Partnership, Haymount, and Westminster, in the amount of $4,469,158.00 (computed as the principal amount

8

of the contract plus accrued interest and other amounts due under the contract). (JA 229-230.)

### D.    Continental denies coverage for the 2010 Lawsuit.

Promptly upon being served with the complaint in the 2010 Lawsuit, Miller Development provided notice to Continental and requested coverage and defense. (JA 122.) By letter dated December 10, 2010, Continental refused coverage. (JA 123-128.) As grounds for its denial, Continental asserted that the 2010 Lawsuit reflected "Interrelated Wrongful Acts" with the 2006 Lawsuit and that, therefore, the "Claim" was first made in 2006, before the Policy Period for the Continental Policy. (*Id.*)

After Miller Development's request for defense was denied by Continental, Miller retained its own counsel, went through discovery, and eventually moved successfully for summary judgment as to all the defendants. The United States District Court for New Jersey granted summary judgment in favor of Miller Development and the other defendants and against Kohn on June 29, 2012 (JA 129-156), finding that the loan to Haymount Mezz "constituted a bona fide debt," and that "because [Haymount Mezz's] secured interest in [Haymount Limited Partnership's] real estate prevails over IBG's prejudgment claim against Haymount Limited Partnership, no fraudulent conveyance can take place." (*Id.*) Judgment was

affirmed by the United States Court of Appeals for the Third Circuit on August 16, 2013. (JA 157-168.)

## IV.   SUMMARY OF ARGUMENT

The 2010 Lawsuit was a Claim under the Policy for which Continental should have paid Defense Costs. The Policy's definition of "Interrelated Wrongful Acts" cannot be stretched to excuse Continental from paying the Defense Costs incurred by Miller to defend successfully the 2010 Lawsuit and the appeal therefrom. Other than Continental's bare allegations of a "common motive" to deprive IBG of its commission, the 2006 Lawsuit and 2010 Lawsuit are not linked. While the 2006 Lawsuit had the same plaintiff and two overlapping defendants with the later lawsuit, the acts complained of were not based on common facts, circumstances, situations, transactions, or events, and the times when the acts occurred were distant. Indeed, nowhere in its opinion did the district court identify the "logical" or "causal" relationship between the 2006 breach-of-contract case and the 2010 fraud case which was premised on a 2008 transaction. Moreover, the 2006 Lawsuit did not allege covered "Wrongful Acts" and therefore the insurer cannot use that earlier lawsuit as a sword to defeat coverage in 2010. And if there was any uncertainty about coverage when Miller Development timely reported the 2010 Lawsuit, that uncertainty should have been resolved in favor of the insured, because exclusions in insurance policies are be construed in favor of a finding of coverage.

## V.    ARGUMENT

### A.    Standard of Review

A district court's decision to grant judgment on the pleadings is reviewed *de novo,* applying the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6). *Burbach Broad Co. of Del. v. Elkins Radio Corp.,* 278 F.3d 401, 405-06 (4th Cir. 2002). The Court must accept as true the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff. *Id.* A motion for judgment on the pleadings "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999). A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact. *Butler v. United States,* 702 F.3d 749, 752 (4th Cir. 2012).

The district court denied Miller Development's motion for summary judgment because the court granted Continental's motion. The Court also reviews the district court's denial of summary judgment in this setting *de novo. See Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)**;** *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014).

**B.     The district court incorrectly construed the "Interrelated Wrongful Acts" provision of the policy.**

"Interrelated Wrongful Acts" is defined in the Policy as two or more wrongful acts "which are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event." (JA 39.) The 2006 Lawsuit and 2010 Lawsuit do not fall within this definition. As explained below, other than bare allegations of a "common motive" to deprive IBG of its commission, the two proceedings are not linked. Yes, there are two overlapping defendants between the two lawsuits (Edward Miller and Haymount Limited Partnership), but the two suits are not based on common facts, circumstances, situations, transactions, or events, and the discrete wrongful acts alleged in the respective proceedings have no logical or causal connection to each other. The alleged "fraudulent conveyance" involved in the sale to Avanti occurred in May 2008; the breach of IBG's contract occurred in July 2004.

**1.     The 2006 Lawsuit did not involve covered "wrongful acts."**

The first problem with Continental's and the district court's analysis was incorrectly characterizing the 2006 Lawsuit as one involving Wrongful Acts. The 2006 Lawsuit did not allege Wrongful Acts; it alleged a breach of written contract by Haymount Limited Partnership. Breach of contract cannot be considered an "interrelated" claim with the 2010 Lawsuit because the 2006 Lawsuit did not involve a covered "Wrongful Act" under the Policy.

12

Again, the Policy defines a "**Wrongful Act**" as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the **Insured Persons** in their capacity as such or by **Named Company** or any Subsidiaries." (JA 54.) It is not defined to include a breach of contract. If a breach of contract could be considered a Wrongful Act under the definition it certainly would have been included, just as "breach of duty" was used.

But the failure to include breach of contract as a Wrongful Act is not surprising since a Claim that involved a breach of contract would be expressly excluded from coverage. As noted, the Policy expressly excluded coverage for breach of contract: the "Insurer shall not be liable to pay any **Loss** under this Coverage Part in connection with any **Claim** made against the **Insured Persons** … for breach of any written or oral contract or agreement." (JA 54-55.) Since a Claim for breach of contract would not be covered—or maybe more precisely, the Insurer is not liable to pay any Loss for a Claim sounding in breach of contract—the concept of a breach of contract would not be expressly or impliedly embraced by the definition of **Wrongful Act**.

Continental sidestepped this exclusion by noting that in the 2006 Lawsuit, Kohn asserted three causes of action which were labeled as torts for conspiracy and tortious interference. But with respect to whether an insurer has a duty to defend a claim, "[i]t is the substance of the underlying claims, not its label, that controls."

13

*Travelers Indem. Co. of Am. v. Jim Coleman Auto. of Columbia, LLC*, 236 F. Supp. 2d 513, 516 (D. Md. 2002). There can be no dispute that the 2006 Lawsuit was substantively a suit for breach of contract. The tort claims merely alleged a conspiracy to "purposefully breach" the IBG Fee Agreement, and the entire complaint was based on breach of the written contract. That is how the United States District Court for the District of New Jersey viewed the case, because the Court dismissed all claims against Mr. Miller and Mr. Clark individually, dismissed American Property Consultants, and ultimately entered judgment against Haymount Limited Partnership, Haymount, and Westminster, solely on Count I for breach of contract.

The district court here also erred when it stated that "Miller concedes that the 2006 Adversary Proceeding and the 2010 Lawsuit are both 'wrongful acts.'" (JA 298 at n. 5.) To the contrary, as stated at oral argument on the motions below: "Now, we can debate whether it's even within the definition of wrongful act as the insurance companies drafted it. But for purposes of analysis, *let's assume* that's [breach of contract] the kind of act that would be a wrongful act." (JA 275, emphasis supplied.) The point of the discussion was even if one assumes that the 2006 Lawsuit reflected a "wrongful act," it was still not an interrelated wrongful act with the 2010 Lawsuit. But the insurance company did not show and the district court did not articulate how breach of contract—not defined as a Wrongful Act under the Policy and excluded

14

from coverage for Losses—could be the basis for a later assertion of "Interrelated Wrongful Acts."

Because the 2006 Lawsuit did not involve a covered "wrongful act," it cannot serve as the claims-made date for the 2010 Lawsuit or any other claim. Indeed had the 2006 Lawsuit been reported to the carrier, Continental would have denied coverage. Continental cannot have it both ways by specifically excluding breach-of-contract actions from coverage, and then "borrowing" alleged "wrongful acts" from that action to block coverage for an otherwise valid claim. Because the 2006 Lawsuit was not a covered matter, Continental's denial of coverage for the 2010 Lawsuit was improper and was a breach of the Policy.

## 2. The court's application of the "interrelated wrongful acts" provision is contrary to the law in this jurisdiction.

But even assuming that the 2006 Lawsuit did constitute a claim predicated on a covered Wrongful Act, the acts underlying the 2006 Lawsuit and the 2010 Lawsuit are not "interrelated" under the plain language of the Policy. As the leading Maryland case has held, two separate and discrete "wrongful acts," committed during different periods of time, *even if* done for the same purpose, do not constitute "interrelated wrongful acts." *See ACE Am. Ins. Co. v. Ascend One Corp.*, 570 F. Supp. 2d 789, 794, 800 (D. Md. 2008).

*ACE* involved two claims against Amerix, the insured under an errors-and-omissions policy. Amerix had been the subject of a 2004 U.S. Senate Report

outlining specific wrongdoing. Plaintiffs in a class action later cited that Senate Report when they alleged that Amerix engaged in "unfair, deceptive and misleading debt management, credit counseling, budget planning and debt collection activities" in violation of federal and state laws. Amerix was also later served with a Maryland administrative subpoena and a Texas investigative demand, each in investigations of Amerix for "allegedly continuing to engage in the type of marketing and credit counseling practices criticized in the Senate Report, [and] which formed the basis of the [class action]." *Id*. at 800.

Amerix's claims-made E&O policy contained a similar (arguably broader) "interrelated wrongful acts" definition than the one at issue here. The Amerix policy provided:

> **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

*Id*. at 793. Citing this language, ACE argued that the state administrative claims and the class action were "interrelated wrongful acts," such that it was not required to provide coverage to Amerix for the administrative claims in light of the earlier class action.

The district court rejected the insurer's application of the "interrelated wrongful acts" language. While the class action and the state administrative claims were based on the same conduct, allegedly undertaken for the same purpose, they

16

were not interrelated because the specific "wrongful acts" underlying the two claims differed "in scope and time." *Id*. The administrative claims, for example, were based on acts "engaged in <u>subsequent</u> to the release of the Senate Report and the initiation of the [class action] litigation in 2004." *Id*. at 801 (emphasis added). The court further distinguished the matters by noting that they involved different parties, and that the scope of the administrative claims was broader than the class action "because it inquires into Amerix's relationships with [credit counseling agencies] not targeted as defendants in the Class Action." *Id*.

The 2006 Lawsuit and the 2010 Lawsuit are based on different alleged conduct performed at different times. The 2006 Lawsuit alleged that the Miller-related party breached a written contract in 2004 when it failed to pay IBG its commission. The 2010 Lawsuit alleged that Miller-related parties—most of whom were not named in the first suit and had no connection to the IBG contract—engaged in fraudulent transfers or preferential payments and conspiracies to commit the same in 2008. The fact that Kohn alleged that IBG was injured by both sets of conduct does not establish that the two actions are "interrelated" for purposes of coverage.

Contrary to the district court's efforts to distinguish the facts in *ACE* (JA 300), there is no real difference in the facts. In *ACE*, the insurance company asserted that two different "claims" involving credit counseling and other matters directed at consumers were "interrelated." But where the *ACE* court found that the differences

17

in scope and time demonstrated that the claims were not interrelated, the district court here did not follow that analysis.

In the 2010 Lawsuit, the alleged "wrongful act" was an allegedly fraudulent and voidable payment (and a conspiracy to commit the same) of $5 million to Haymount Mezz in May 2008. That act—payment of $5 million to a secured creditor after sale of real property—served as the basis for all claims against the Miller defendants. In the 2006 Lawsuit, the "act" underlying the claim was the breach of the written IBG contract in July 2004. That contractual breach served as the basis for all five claims, and for the judgment eventually entered against Haymount Limited Partnership, Haymount, and Westminster. These two acts were separated by nearly four years, involving different conduct, by different actors, and have no common nexus. Indeed, as in the *ACE* case, the 2006 Lawsuit for breach-of-contract was already being litigated long before the alleged "wrongful act" underlying the 2010 Lawsuit ever occurred.

Any suggestion that the two lawsuits are "interrelated" is further belied by the fact that they involved different sets of actors setting out to do different things. The 2006 Lawsuit was an action to enforce IBG's rights under the IBG written contract. It was brought against the party to the contract (Haymount Limited Partnership), its two general partners, and the two individuals who signed the contract. The New Jersey District Court similarly viewed the 2006 Lawsuit solely as a breach-of-

18

contract case and eventually entered judgment solely on one count for breach of contract, having rejected and dismissed "tort" claims that did not state causes of action (for example, conspiracy to interfere with one's own contract.)

By contrast, the 2010 Lawsuit was purely a tort action, and implicated a large group of defendants, including Miller Development and other Miller entities and individuals that had no involvement in the 2006 Lawsuit. Instead, the 2010 Lawsuit related solely to the alleged action of the parties in *2008*—long after the 2006 Lawsuit was underway.

Under *ACE*, and under the plain language of the Policy, the 2006 and 2010 Lawsuits do not involve "Interrelated Wrongful Acts." Continental did not satisfy its burden of demonstrating that the 2010 Lawsuit was properly excluded from coverage.

**C.    The district court erroneously endorsed the insurer's expanded concept of "common scheme."**

In order for two claims to be "interrelated," there must first be a "common fact, circumstance, situation, transaction or event" between them. In its Counterclaim, Continental alleged that the 2006 Lawsuit and 2010 Lawsuit are interrelated "by reason of [Haymount Limited Partnership's] alleged failure to pay IBG the commission required by the Fee Agreement." (JA 25.) In its motion for judgment on the pleadings, Continental repeated its position that the two distinct and disparate acts were committed with the same motive—to keep IBG from recovering

any amount for its alleged services rendered in connection with the Haymount Project. The district court adopted this view of the case (JA 300), but did not even identify the "common fact, circumstance, situation, transaction, or event" which supposedly made the alleged wrongful acts "interrelated."

Continental suggested that the 2006 Lawsuit and 2010 Lawsuit are "interrelated" because they were both done with the same "motive" of depriving IBG of its fee. This is not a proper basis for "interrelatedness." As the *ACE* court held, a common purpose between disparate acts, even when the acts involve the same identical conduct, does not establish "interrelatedness" where the acts otherwise differ in scope and time. Other courts have similarly held that a common motive, *even if true*, does not establish "interrelatedness" between two acts. As one court has stated: "a single motive does not make a single claim." *FDIC v. Mmahat,* 907 F.2d 546, 554 (5th Cir. 1990). *Cf. Glascoff v. OneBeacon Midwest Ins. Co.*, 13 No. 13 CIV. 1013 DAB, 2014 WL 1876984, *6 (S.D.N.Y. May 8, 2014) (while two claims "may arise out of the same deficient corporate structure or Plaintiffs' lack of oversight," where the claims do not share common facts and circumstances they are not interrelated with each other; the "bald allegations that the two Claims arise out of a common set of circumstances are insufficient to demonstrate a sufficient factual nexus.").

A similar "motive" argument was proffered by the insured in *Eureka Fed. Sav. & Loan Ass'n. v. Am. Cas. Co. of Reading, Pa.,* 873 F.2d 229 (9th Cir. 1989). In that case, Eureka sought damages from five of its former officers for tortious acts in connection with the issuance of 200 loans. Eureka's D&O policy stated that "[c]laims based on or arising out of the same act, <u>interrelated acts</u>, or one or more series of similar acts, … shall be considered a single loss," to which a lower limit of liability for single claims would apply. *Id*. at 234 (emphasis added). Like Continental did here, American Casualty argued that the various claims were "interrelated," and therefore constituted a "single loss," because they were all undertaken for the same *purpose*—as part of "an aggressive lending strategy adopted by Eureka in 1983 to reverse chronic operating losses." *Id*. But the Ninth Circuit rejected this argument, explaining that even though there may have been a single "decision to implement the aggressive loan policy" to which the various tortious acts stemmed, that decision did not cause the losses—it was the "numerous intervening business decisions that took place after the loan policy was initiated" that caused the individual losses. *Id*. at 234-35. The court held that "the mere existence of an aggressive loan policy is insufficient as a matter of law to transform disparate acts and omissions" into a single loss. *Id*. at 235.

Similarly, in *FDIC v. Mmahat,* the general counsel to a savings-and-loan association allegedly failed to advise as to the existence of certain FDIC loan

regulations, gave the wrong advice about the amount of loans permitted to single borrowers, and gave improper advice as to the aggregate loan limits for borrowers with common ownership. 907 F.2d at 554. These three acts, allegedly done contemporaneously and repeatedly, were also done for the same *purpose*—to increase the fees earned by the general counsel's law firm on loan closings. *Id.* at 549. The insurer argued that the various instances of malpractice should be considered a single claim (to which a lower liability limit would apply) because the acts were "logically and causally connected" in that they stemmed from a common scheme to generate loan fees for the law firm. The Fifth Circuit rejected the argument, holding that "a single motive does not make a single claim." *Id.* at 554. As such, even though the various instances of malpractice were all done for the same purpose, they still constituted "three discrete acts of malpractice." *Id.*

Here, the two discrete sets of actions involve (1) the failure to pay IBG its fee after the GMAC loan closing in July 2004, and (2) the payment of $5 million to Haymount Mezz after sale of the Haymount property in May 2008. Continental's sole basis for connecting these two acts is the argument that they were done by different parties with the same motive—to deprive IBG of its fee. Even if that were true, that common motive does not establish "interrelatedness" under the Policy for widely separated conduct like this.

The difference in relief achievable or achieved in the two suits further underscores that the alleged wrongful acts underlying the claims are not interrelated. At bottom, the 2010 Lawsuit was for disgorgement of allegedly fraudulently conveyed monies. Had Mr. Kohn been successful in his 2010 Lawsuit, he would have forced recipients of the allegedly fraudulently conveyed monies to disgorge them back to Haymount Limited Partnership (the allegedly "rightful" recipient), from which the money would have been made available to that Partnership's creditors, including IBG. (JA 276-278.) That relief is far different from the relief actually obtained in the 2006 Lawsuit, namely a judgment for an amount certain in favor of the IBG Trustee and against the party IBG contracted with (Haymount Limited Partnership) and that entity's two general partners.

### D. The district court erred in giving the insurer, not the insured, the benefit of the doubt regarding coverage.

In Maryland, insurance policies are construed under general principles of contract interpretation. Thus, the policy is construed as a whole, and words are accorded their "usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ it in a special or technical sense." *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.,* 889 A.2d 387, 393 (Md. 2006) (quoting *Cheney v. Bell Nat'l Life Ins. Co.,* 556 A.2d 1135, 1138 (Md. 1989)). To the extent that there is ambiguity in the language of the policy, it will be construed liberally in favor of the insured. *Dutta v. State Farm Ins. Co.,* 769 A.2d 948, 957 (Md. 2001). Exclusions are

23

to be interpreted narrowly and "construed in favor of a finding of coverage," with the burden on the insurer to show that an exclusion applies. *Megonnell v. United Servs. Auto Ass'n,* 796 A.2d 758, 772 (Md. 2002).

Here, when the request for coverage for the 2010 Lawsuit was tendered by Miller Development to Continental, there was at least a question as to whether coverage could be denied properly within the meaning of the Policy. At that point in time, with the 2010 Lawsuit having just been filed, the insurer should have provided Defense Costs. The exclusion which Continental invoked—namely that there was an "interrelated wrongful act"—should have been construed narrowly and in favor of coverage.

Fortunately for all concerned, including Continental, Miller Development was able to pull together the resources necessary to provide the successful defense of Mr. Kohn's 2010 lawsuit for fraud and breach of duty and conspiracy as well as the appeal taken from the judgment. But when Miller Development turned to its insurer in real time in 2010 to ask for the coverage it bought and paid for, the Policy should have been properly construed to provide coverage because Continental did not demonstrate that the exclusion it relied upon applied.

## VI.   CONCLUSION

For the reasons stated above, Appellant W.C. & A.N. Miller Development Company respectfully requests this Court reverse the district court's grant of Continental's Motion for Judgment on the Pleadings, vacate the denial of Miller Development's Motion for Partial Summary Judgment, and remand the case for further proceedings.

## VII.  REQUEST FOR ORAL ARGUMENT

W.C. & A.N. Miller Development Company respectfully requests that the Court conduct oral argument for this appeal.


Respectfully submitted,

HOLLAND & KNIGHT LLP

 **/s/  Paul J. Kiernan**
Paul J. Kiernan
Holland & Knight, LLP
800 17th Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 955-3000
Facsimile: (202) 955-5564
E-mail:  Paul.Kiernan@hklaw.com

*Counsel for Appellant W.C. & A.N. Miller
Development Company*

# United States Court of Appeals
## for the Fourth Circuit

*W.C. and A.N. Miller Developme v. Continental Casualty Company*, No. 14-2327

### CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by HOLLAND & KNIGHT, LLP, attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **January 26, 2015**, counsel has authorized me to electronically file the foregoing **Brief for Appellant** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Ashley E. Eiler
> Richard A. Simpson
> WILEY REIN, LLP
> 1776 K Street, NW
> Washington, DC 20006
> (202) 719-7000
> aeiler@wileyrein.com
> rsimpson@wileyrein.com
> *Counsel for Appellee*

Additionally paper copies will be mailed to the above counsel on this date.

Unless otherwise noted, 8 paper copies have been filed with the Court on the same date via U.S. Express Mail.

January 26, 2015

/s/ Robyn Cocho
Robyn Cocho
Counsel Press

26

## CERTIFICATE OF COMPLIANCE

1.    This Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this Brief contains 5,635 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

HOLLAND & KNIGHT LLP

  /s/  **Paul J. Kiernan**
Paul J. Kiernan
Holland & Knight, LLP
800 17th Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 955-3000
Facsimile: (202) 955-5564
E-mail:  Paul.Kiernan@hklaw.com

*Counsel for Appellant W.C. & A.N. Miller Development Company*

27